UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE MARITIME RESOURCES LLC, <br><br> Plaintiff, <br><br> v. <br><br> INDUSTRIAL POWER SUPPLY INC, d/b/a SKAGIT HYDRAULICS, <br><br> Defendant. | IN ADMIRALTY <br><br> CASE NO. 2:20-cv-00059-BAT <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Defendant Industrial Power Supply, Inc., d/b/a Skagit Hydraulics ("Skagit Hydraulics") moves to dismiss the complaint of Plaintiff Cascade Maritime Resources LLC ("Cascade Maritime") for lack of subject matter jurisdiction, pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. 9. Cascade asserts subject matter jurisdiction pursuant to 28 U.S.C. §1333 (admiralty), and 28 U.S.C. §1331 (federal question), specifically 46 U.S.C. §31343. Dkt. 1. Skagit Hydraulics argues that parties' agreement is not a maritime contract or alternatively, if it is a maritime contract, it is unenforceable under the Uniform Commercial Code ("UCC") and Washington law because the agreement is not in writing. Dkt. 9 at 2.

On March 11, 2020, the undersigned recommended that Defendant's motion to dismiss be denied. *See* Dkt. 14 (Report and Recommendation). On April 3, 2020, the parties consented to

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 1

1  proceed before the undersigned Magistrate Judge. Dkt. 16 at 1. Based on the parties' consent, the

2  Report and Recommendation is withdrawn and substituted with this Order.

## ALLEGATIONS IN COMPLAINT

Cascade is engaged in the business of owning and operating the passenger vessel CASCADIA, O.N. 981640 (the "Vessel"). Dkt. 1, ¶ 1. Skagit Hydraulics is a Washington corporation, which performs hydraulic repair in the Western District of Washington. *Id.*, ¶ 2.

Cascade purchased the Vessel in April 2018 and began refurbishment and refit work on the Vessel in May 2018. *Id.*, ¶ 5. 6. In August 2018, Cascade was referred to Skagit Hydraulics to perform repair, design, replacement and installation work on the hydraulic systems of the Vessel. *Id.*, ¶ 6. Prior to reaching an agreement, Cascade and Skagit Hydraulics discussed the Vessel and the anticipated scope of work. Skagit Hydraulics represented to Cascade that Skagit Hydraulics was experienced in marine hydraulic systems, qualified to perform the work, understood the scope of work and requirements, and could perform the requested work in a timely and competent manner. *Id.*, ¶ 7.

Following these representations, the parties entered into an oral contract for the repair, design, replacement and installation work on the hydraulic systems of the Vessel and for preparation of a schematic of the Vessel's hydraulic system. The planned work covered many aspects of the hydraulic system, including troubleshooting and repairing the existing hydraulic system and components, and the design and install of a newer upgraded hydraulic system to operate the hydraulic pumps for various systems on the Vessel. *Id.*, ¶ 8.

Despite its agreement and representations, Skagit Hydraulics failed to perform timely repair, replacement, and upgrade work on the Vessel as agreed. *Id*., ¶ 9. The work that was performed by Skagit Hydraulics on the Vessel was inadequate, not as agreed, and failed to meet

marine or industry standards. This included incorrect design and installation of hydraulic components, improper installation techniques, and similar problems. Skagit Hydraulics further provided components to the Vessel about which it misrepresented the character and quality of those components. *Id.*

As a result of Skagit Hydraulics' failure to perform work, improper or inadequate work, and the defective hydraulic systems installed, Cascade has been forced to perform corrective repairs to the Vessel's hydraulic system. *Id.*, ¶ 10. Thus far, Cascade has incurred repair costs of $15,773.55 as a direct result of Skagit Hydraulics' inadequate work. Further repair charges exceeding $15,000 are anticipated to cure the defective or inadequate design and installation work by Skagit Hydraulics. *Id*. Cascade also claims lost income from the Vessel's charter business in an amount no less than $8,000, and other consequential and incidental damages, including additional loss of use. *Id.*, ¶ 11.

## LEGAL STANDARD

Rule 12(b)(1) authorizes a party to move to dismiss a complaint based on a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction." *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013) (citing *McNutt v. GM Acceptance Corp.*, 298 U.S. 178, 182–83, 56 S. Ct. 780, 80 L.Ed. 1135 (1936)). Challenges to subject matter jurisdiction can take two forms, facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). It is clear from its motion to dismiss that Skagit Hydraulics is making a facial challenge. *See* Dkt. 9, p. 3 ("Defendant is not disputing any evidence for purposes of this motion, because Plaintiff has not alleged facts or claims sufficient to establish jurisdiction.").

In a facial challenge to subject matter jurisdiction, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.2004) (quoting *Safe Air*, 373 F.3d at 1039. "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute." *Wolfe*, 392 F.3d at 362. Rather, the allegations in the complaint are "assume[d] ... to be true and [the court] draw[s] all reasonable inferences in [plaintiff's] favor." *Id*. at 362 (citing Fed. R. Civ. P. 12(b)(1) and cases); *see also Doe v. Schachter*, 804 F.Supp. 53, 56–57 (N.D.Cal.1992) ("Where there is a facial attack on the court's subject matter jurisdiction ... the plaintiff enjoys safeguards akin to those applied when a Rule 12(b)(6) motion is made." (internal citation omitted)).

## DISCUSSION

"[C]ontracts for repairs to a vessel ... come under the scope of admiralty jurisdiction." *La Esperanza de P.R., Inc. v. Pérez y Cía. de P.R.*, 124 F.3d 10, 16 (1st Cir.1997). This brings such a case under federal jurisdiction. *See* U.S. Const. art. III, § 2. "Admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law." *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir.1994). "In the absence of a relevant statute, the judicially-developed norms of the general maritime law, 'an amalgam of traditional common-law rules, modifications of those rules, and newly created rules,' governs actions in admiralty." *La Esperanza*, 124 F.3d at 16 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 865, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). Although state law may supplement federal maritime law when the latter is silent or where a local matter is at issue, it "may not be applied where it would conflict with [a federal] maritime law." *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1047 (3d Cir.1988); *see also*, *Pac. Merch. Shipping Ass'n. v. Aubry*, 918 F.2d

1409, 1422 (9th Cir.1990) (emphasis in original) ("state law may supplement federal admiralty only when the matter at hand is of local concern and the "state law does not *actually conflict* with federal law or interfere with the *uniform working* of the maritime legal system."

Cascade brings two claims related to its oral contract with Skagit Hydraulics – a breach of repair contract and breach of warranty of workmanlike service. The primary issue, as posed by Skagit Hydraulics, is whether the parties' oral contract related to the construction of or supply of materials to a ship – which are not within admiralty jurisdiction. If the breach of contract claim is not within admiralty jurisdiction, then neither is the warranty claim grounded in such contract.

Based on the allegations set forth Cascade's complaint, the Court concludes that this case falls within the Court's admiralty jurisdiction.

A.  Breach of Repair Contract

Cascade alleges that it entered into an oral contract with Skagit Hydraulics for the repair, design, replacement, and installation work on the hydraulic systems of the Vessel and for preparation of a schematic of the Vessel's hydraulic system. Dkt. 1, at ¶ 8. The planned work covered many aspects of the hydraulic system, including troubleshooting and repairing the existing hydraulic system and components, as well as the design and installation of a newer upgraded hydraulic system to operate the hydraulic pumps for various systems on the Vessel. *Id*.

Skagit Hydraulics acknowledges that its contract with Cascade involved both troubleshooting the existing hydraulic system and the design and purchase of a new hydraulic system. Dkt. 9, p. 5. However, Skagit Hydraulics argues that because "the major component of the parties' agreement involved the design and purchase of "a novel hydraulic system required prior to launching the vessel," the contract is primarily non-maritime. *Id*.

Whether an action for breach of contract falls within admiralty jurisdiction depends upon the nature and subject matter of the contract. *See*, *e.g.*, *New Jersey Steam Navigation Co. v. Merchant's Bank*, 47 U.S. (6 How.) 344, 391, 12 L.Ed. 465 (1848); *accord Archawski v. Hanioti*, 350 U.S. 532, 533 n. 2, 76 S.Ct. 617, 100 L.Ed. 676 (1956). Where a contract relates to the repair or navigation of a vessel, a dispute arising from the contract lies within admiralty jurisdiction. *See Owens-Illinois, Inc. v. U.S. Dist. Court for W. Dist. of Wash., at Tacoma*, 698 F.2d 967, 970 (9th Cir. 1983); *See also*, *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961) (contrasting ship repair and construction); *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 42 S.Ct. 243 (1922); *Operaciones Tecnicas Marinas, S.A.S. v. Diversified Marine Servs.*, L.L.C., 658 Fed. Appx. 732, 738 (5th Cir. 2016). *See also* Thomas J. Schoenbaum, 1 ADMIRALTY AND MARITIME LAW § 5:14 (6th ed.).

Skagit Hydraulics likens the replacement and installation of a "novel" hydraulics system in an existing vessel to the construction of a vessel. In support of its contention that this makes the parties' contract non-maritime, it relies on *Boat La Sambra v. Lewis*, 321 F.2d 29 (9th Cir. 1963). As explained in *La Sambra*, however, if a contract for equipment and installation is related to the repair of a *completed* boat, the contract is maritime. *Id.* at 30 (citing *New Bedford*, 258 U.S. 96) (emphasis added). On the other hand, "[t]he supplying of the *original* equipment of the vessel as well as the *building of the hull* is held to be outside of the admiralty jurisdiction." *Id.* at 31 (emphasis added); *see also*, *Tucker v. Alexandroff*, 183 U.S. 424, 438, 22 S.Ct. 195, 46 L.Ed. 264 (1910) ("…from the moment her keel touches the water she is transformed and becomes a subject of admiralty jurisdiction.")

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 6

Simply put, if the subject matter of a contract is the repair or refitting of a ship, the contract is within maritime jurisdiction of the federal court. *See e.g.*, *Hinkins S.S. Agency v. Freighters, Inc.*, 351 F.Supp. 373 (N.D.Cal.1972), *affirmed* 498 F.2d 411 (9th Cir.1974).

Here, Cascade alleges that it purchased the Vessel and thereafter, the parties entered into an oral contract for repair, design, replacement, and installation work on her hydraulic systems. Dkt. 1 at ¶8. This is much different than the installation of radios, which were a component of the newly constructed vessels in *La Sambra*, and it is much different than the installation of an hydraulic system in a newly constructed vessel prior to its launch.

Based on the allegations of the Complaint, the Court concludes that the oral contract of the parties is a maritime contract and therefore, lies within admiralty jurisdiction.

B.     Breach of Warranty of Workmanlike Services

Skagit Hydraulics argues that Cascade's claim for the breach of warranty of workmanlike services is unenforceable because Cascade relies on an oral contract. However, it is "an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law. *Kossick*, 365 U.S. at 735. Thus, whether the contract is oral or written has no bearing on whether admiralty jurisdiction lies.

In addition, the warranty of workmanlike service is implied within maritime service contracts and one who undertakes to repair a vessel is under a duty to act in a workmanlike manner. *Italia Societa Per Azioni Di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 84 S.Ct. 748 (1964); *H & H Ship Service Co. v. Weyerhaeuser Line*, 382 F.2d 711 (9th Cir.1967). *See also*, *Prowler, LLC v. York Int'l Corp.*, C06-660JLR, 2007 WL 2363046, at *4 (W.D. Wash. Aug. 14, 2007 ROBART, J.) (claims for breach of implied warranties (workerlike performance,

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS - 7

merchantability, and fitness for a particular purpose), arise under this court's admiralty jurisdiction, 28 U.S.C. § 1333).

Here, it is alleged that Skagit Hydraulics failed to perform timely repair, replacement, and upgrade work on the Vessel as agreed; performed work that was inadequate, not as agreed, and not up to marine or industry standards; incorrectly designed and installed hydraulic components; and, misrepresented the character and quality of components that were provided to the Vessel. Dkt. 1 at ¶ 9.

Because the Complaint alleges that Skagit Hydraulics breached the duty to act in a workmanlike manner in effecting the repairs to the Vessel and this Court concludes that the parties' oral agreement is a contract subject to federal maritime law, this claim also falls properly within this Court's admiralty jurisdiction.

C. Application of UCC and Washington Law

Skagit Hydraulics does not dispute the existence of the parties' oral contract but argues that "[e]ven if Plaintiff had facially alleged a maritime contract within the parameters of 28 U.S.C. § 1333, the Agreement is unenforceable under the Uniform Commercial Code and Washington law." Dkt. 9, p. 5.

With admiralty jurisdiction comes the application of substantive admiralty law. *East River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (internal citations omitted). Because the parties' oral contract for repairs of the Vessel is within admiralty jurisdiction, the next question is whether substantive admiralty law preempts application of the Statute of Frauds. When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation. *Kossick,* 365 U.S. at 735,

81 S.Ct. 886. In addition, in contract cases, which implicate parties' voluntary agreements, local interests are generally minimized. *Id.*, at 739, 81 S.C. 886.

State law can supplement admiralty law "so long as state law *does not actually conflict with federal law or interfere with the uniform working of the maritime legal system.*" *Pac. Merch. Fishing Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir. 1990). Under admiralty law, an oral contract is considered valid. *See*, *e.g.*, *Kossick*, 365 U.S. at 734 ("Oral contracts are generally regarded as valid by maritime law."); *see also Round Gold LLC. v. Ameron Int'l Corp., No. C07-791Z*, 2008 WL 3288408, at *4 (W.D. Wash. Aug. 7, 2008); *Kirby Offshore Marine Pac., LLC v. Emerald Servs., Inc.*, 2017 A.M.C. 1269 (W.D. Wash. 2017) ("Under maritime law contracts can either be oral or written.").

In *Kossick,* the Supreme Court held that the federal maritime rule validating oral contracts precluded application of New York's Statute of Frauds. *See id.*, 365 U.S. at 739, 81 C.Ct. 886. Similarly, the federal maritime rule validating oral contracts precludes application of Washington's Statute of Frauds in this case. Application of state law under these circumstances would disturb the uniformity of maritime law by upsetting parties' expectations that oral maritime contracts are generally considered valid.

Because there is clear and unambiguous maritime law on this point, the Court concludes that federal maritime law governs the oral contract at issue in this case.

## CONCLUSION

Accepting Cascade's allegations as true and drawing all reasonable inferences in its favor, the Court concludes that the allegations are sufficient as a legal matter to invoke this Court's admiralty jurisdiction. *See e.g., Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Accordingly, Skagit Hydraulic's motion to dismiss (Dkt. 9) is **DENIED**.

DATED this 7th day of April, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge